UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ELECTRIC POWER SYSTEMS INTERNATIONAL, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 4:15 CV 1171 CDP |
| ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM AND ORDER

In this breach of contract action, plaintiff Electric Power Systems

International, Inc. (EPS), claims that its insurer, defendant Zurich American

Insurance Company, wrongfully denied coverage on a third-party property damage

claim made against EPS.   EPS also brings claims of bad faith failure-to-settle and

vexatious refusal to pay.   Pending before the Court is EPS's motion to compel in

which it claims that Zurich improperly invoked the attorney-client and work product

privileges to withhold certain documents from production in discovery.   I have

reviewed the challenged documents *in camera* and, based upon my review, the

motion to compel will be granted in part and denied in part.

## Background

In July 2014, EPS was performing labor under a contract it had with

Louisville Gas and Electric Company (LGE) when an LGE transformer was damaged.   LGE claimed that EPS caused the damage.   EPS tendered the LGE claim to Zurich on July 30, 2014.   Zurich denied the claim on August 11, 2014.

On August 22, 2014, Zurich received correspondence from EPS's legal counsel, advising that EPS was willing to take legal steps and consider all legal avenues available in relation to the denied claim.   Brian Lindemann, a Zurich adjuster assigned to the claim, thereafter contacted Zurich's in-house legal counsel, John Freeman.   Zurich eventually retained outside counsel.   EPS first received correspondence from Zurich's outside counsel on January 5, 2015.   EPS filed this lawsuit on July 10, 2015.

During the course of discovery and in response to EPS's request for production of documents, Zurich asserted the attorney-client and/or work product privilege with respect to information contained in a number of documents from its claim file and claim notes.   Zurick produced redacted versions of these documents and a privilege log justifying the redactions.   In its motion to compel, EPS challenges the redactions made in 55 pages of these documents, questioning whether the withheld information is truly protected by the asserted privileges.   I granted EPS's request for *in camera* review, and Zurich produced to me unredacted versions of the documents, identified by Bates numbers, with the originally redacted portions of the documents contained within outlined boxes.

**Discussion**

As the party objecting to discovery on the ground of privilege, Zurich bears

the burden of establishing the existence of privilege, whether it be attorney-client or

work product. *Advanced Pain Ctrs. Poplar Bluff v. Ware*, 11 F. Supp. 3d 967 (E.D.

Mo. 2014). If Zurich meets its burden with respect to attorney-client privilege, the

inquiry ends given that the privilege is an absolute bar to production absent waiver.

If Zurich shows the information is protected because it is work product, EPS may

nevertheless obtain the discovery if it shows a substantial need for the documents

and that it cannot otherwise obtain the substantial equivalent of the materials without

undue hardship. Fed. R. Civ. P. 26(b)(3)(A)(ii); *PepsiCo., Inc. v. Baird, Kurtz &*

*Dobson LLP*, 305 F.3d 813, 817 (8th Cir. 2002).

Attorney-Client Privilege

State law applies to claims of attorney-client privilege in diversity cases.

*Baker v. General Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir. 2000).

The privilege "protects 'any professionally-oriented communication between

attorney and client regardless of whether it is made in anticipation of litigation or for

preparation for trial.'" *Lloyd's Acceptance Corp. v. Affiliated FM Ins. Co.*, No.

4:05CV1934 DDN, 2012 WL 1389708, at *7 (E.D. Mo. Apr. 23, 2012) (quoting

*State ex rel. Tillman v. Copeland*, 271 S.W.3d 42, 45 (Mo. Ct. App. 2008)).

> [W]here legal advice of any kind is sought from a professional legal
> advisor in his capacity as such, the communications relevant to that

purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal advisor except the protection be waived.

*Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977) (internal quotation marks and citation omitted). The privilege does not attach unless the communication is between parties bearing the relationship of attorney and client, is made to obtain legal services or advice, and involves the lawyer in his capacity as a lawyer – "not in some other capacity." *Id.; see also United States v. Spencer*, 700 F.3d 317, 320 (8th Cir. 2012); *Tillman*, 271 S.W.3d at 45.

Communications between a client's representatives regarding the decision to seek legal advice is not subject to the privilege if it is not a request directed to counsel for the purpose of obtaining such advice. *Olga Despotis Trust v. Cincinnati Ins. Co.*, No. 4:12CV02369 AGF, 2014 WL 3477310, at *3 (E.D. Mo. July 15, 2014). Nor does merely including counsel among the recipients of a document bring the document within the ambit of the attorney-client privilege; the document must be shared in furtherance of the client's solicitation of legal advice. *Lloyd's,* 2012 WL 1389708, at *7 (citing *Diversified Indus.,* 572 F.2d at 609; *Monsanto Co. & Monsanto Tech. LLC v. E.I. Du Pont de Nemours & Co.*, No. 4:09CV686 ERW, 2011 WL 4408184, at *2 (E.D. Mo. Sept. 22, 2011)).

Communications made by representatives of an insurer for the purpose of facilitating the rendition of legal services to the client are protected by the

attorney-client privilege. *Navigators Mgt. Co. Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 4:06CV1722 SNLJ, 2009 WL 465584, at *4 (E.D. Mo. Feb. 24, 2009). These include communications with in-house counsel as well as memorializing such communications. *Lloyds*, 2012 WL 1389708, at *7-8. Keeping in-house counsel apprised of the business activities of the insurer's adjuster, however, is not protected. *Id.* at *7; *see also Monsanto Co.*, 2011 WL 4408184, at *2 (the "attorney-client privilege does not cover client communications that relate only to business or technical data, where the client is not sharing that information in order to solicit legal advice").

To the extent Zurich contends that certain redacted portions of the challenged documents are protected by the attorney-client privilege,[1] I have reviewed the documents *in camera* and find the following portions of the documents not to fall within the attorney-client parameters described above and therefore not to be so protected:

     a.    Bates 145:   the information contained in the Subject line of the email

     b.    Bates 158:   the information contained in the Subject line of the email

     c.    Bates 168:   first redacted box – claim number, but *without* the accompanying worded description

     d.    Bates 169-175:   copy of August 11 denial letter to EPS, but *without*

---

[1] With respect to the redacted portions of Bates 234, 341, and 381, Zurich claims only that they are protected by the work product privilege. I therefore do not consider whether the attorney-client privilege applies to these redactions.

handwritten note at top of Bates 169

e.    Bates 182:   first redacted box – claim number and worded description

f.    Bates 233:   claim number contained in Subject line of the email, but *without* the accompanying worded description

g.    Bates 335:   second redacted box

h.    Bates 347:   claim number contained in the first redacted box with general worded reference, but *without* worded description after hyphens

i.    Bates 364:   entirety of redactions

j.    Bates 366:   entirety of redactions

k.    Bates 374:   entirety of redactions

l.    Bates 375-376:    entirety of redactions

The remaining redacted portions to which Zurich avers the privilege applies are protected given that they contain or memorialize communications between Zurich's representatives and in-house and/or outside counsel for the purpose of obtaining legal services and advice.

<u>Work Product</u>

Work product immunity is determined by federal law.  *Baker,* 209 F.3d at 1053.   Under Fed. R. Civ. P. 26, a party may not ordinarily discover documents prepared in anticipation of litigation by an opposing party unless the party seeking discovery shows that it has a substantial need for the materials and cannot, without undue hardship, obtain the substantial equivalent by other means.  *See also*

*Pepsico*, 305 F.3d at 817; *Baker*, 209 F.3d at 1054.

The question of whether a document was prepared in anticipation of litigation

is a factual one, requiring evidence from which the Court can make a determination.

Statements of counsel are not evidence. *Travelers Prop. Cas. Co. of Am. v.*

*National Union Ins. Co. of Pittsburgh, PA*, 250 F.R.D. 421, 424 (W.D. Mo. 2008).

> [T]he test should be whether, in light of the nature of the document and
> the factual situation in the particular case, the document can fairly be
> said to have been prepared or obtained because of the prospect of
> litigation.   But the converse of this is that even though litigation is
> already in prospect, there is no work product immunity for documents
> prepared in the regular course of business rather than for purposes of
> litigation.

*Simon v. G.D. Searle & Co.,* 816 F.2d 397, 401 (8th Cir. 1987).   To be protected,

the documents must have been prepared after a "specific threat" of litigation became

"palpable."   That litigation was "merely a possibility" is insufficient.   *Lloyd's,*

2012 WL 1389708, at *4.

In the insurance context, the Seventh Circuit has noted that much of the

paperwork generated by insurance companies "is prepared with an eye toward a

possible legal dispute over a claim[.]"  *Logan v. Commercial Union Ins. Co.,* 96

F.3d 971, 977 (7th Cir. 1996).   Because of this, "it is important to distinguish

between 'an investigative report developed in the ordinary course of business' as a

precaution for the 'remote prospect of litigation' and materials prepared *because*

some 'articulable claim, likely to lead to litigation, . . . ha[s] arisen.'"   *Id.* (quoting

*Binks Mfg. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109 (7th Cir. 1983))

(emphasis added). An insurer's decision to decline coverage is usually the point at

which the ordinary course of business ends and the anticipation of litigation begins.

In making this determination, courts must consider the factual context of each case.

*Lloyd's,* 2012 WL 1389708, at *4.

Zurich denied EPS's claim on August 11, 2014, but was not aware until

August 22 that EPS had retained outside counsel and was considering legal action.

August 22, 2014, is therefore the date that a specific threat of litigation became

palpable and thus is the effective date from which Zurich could have anticipated

litigation for purposes of work product protection. Accordingly, any redacted

information in documents created before August 22, 2014, is not subject to the work

product privilege and must be produced to EPS. This applies to the information

contained in the redacted block at the bottom of Bates 375 and at the top of Bates

376, as well as to Bates 381.

With respect to the remainder of the redacted information not subject to the

attorney-client privilege, my *in camera* review shows only certain portions of the

redactions to be entitled to work product protection; the other portions were

prepared in the ordinary course of business and not for purposes of litigation. *See*

*United States Liab. Ins. Co. v. Global Acquisitions, LLC*, No. 4:14CV1887 RWS,

2016 WL 2594067, at *2 (E.D. Mo. May 5, 2016) (citing *Diversified Indus.*, 572

F.2d at 604).   Whether or not a threat of litigation exists, an insurer's continued

attempt to adjust a claim is part of its ordinary course of business.   *Id.*

Accordingly, the following redactions are not protected by the work product

privilege and must be produced to EPS:

    a.     Bates 145:   the information contained in the Subject line of the email

    b.     Bates 158:   the information contained in the Subject line of the email

    c.     Bates 168:   first redacted box – claim number, but *without* the accompanying worded description

    d.     Bates 169-175:     copy of August 11 denial letter to EPS, but *without* handwritten note at top of Bates 169

    e.     Bates 182:   first redacted box – claim number and worded description

    f.     Bates 233:   claim number contained in Subject line of the email, but *without* the accompanying worded description

    g.     Bates 234:   first redacted box – claim number and worded description

    h.     Bates 347:   claim number contained in the first redacted box with general worded reference, but *without* worded description after hyphens

Vexatious Refusal to Pay and Substantial Need

As previously stated, EPS may obtain the redacted portions of the challenged

documents that are otherwise protected by the work product privilege if it shows a

substantial need for the redacted information and that it cannot obtain the substantial

equivalent of the information without undue hardship.

There often is a substantial need for discovery of information in a claims file

as it relates to a claim of vexatious refusal to pay.   In *Logan,* the Seventh Circuit

recognized that "allowing a plaintiff to overcome an insurer's work product privilege

may be particularly appropriate in an action for bad faith, in light of the insurer's

virtual monopoly over the evidence required to support an action."   96 F.3d at 977.

"[T]he substantial need arises because the 'strategy, mental impressions[,] and

opinion of the insurer's agents concerning the handling of the claim are directly at

issue.'"   *Lloyd's*, 2012 WL 1389708, at \*5 (quoting *Holmgren v. State Farm Mut.*

*Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992)).   *See also Busch Props., Inc. v.*

*National Union Fire Ins. Co. of Pittsburgh*, No. 4:12CV2318 SNLJ, 2014 WL

2815655, at \*5 (E.D. Mo. June 23, 2014).

The mere pleading of vexatious refusal to pay, however, does not itself create

a substantial need for an insurer's internal documents.   "Instead, the plaintiff must

demonstrate some likelihood or probability that the documents sought may contain

evidence of bad faith.   The required showing is not a high hurdle, given that the

plaintiff can only speculate as to the documents' contents."   *Lloyd's*, 2012 WL

1389708, at \*6 (internal citations and quotation marks omitted).   *See also United*

*States Liab. Ins. Co.*, 2016 WL 2594067, at \*3 (plaintiff need only show a

possibility, not a certainty, that the documents contain evidence of bad faith).   If *in*

*camera* examination of the documents shows no evidence of bad faith, the

documents need not be produced.   *See id.*

EPS makes no argument – either in its motion to compel, accompanying memorandum in support, or reply brief – demonstrating some likelihood or probability that the redacted information otherwise protected by the work product privilege may contain evidence of bad faith.   Instead, EPS cursorily invokes the language of Rule 26 to state only that it has a substantial need for the information given its relevance to the claims of bad faith.   Allegations of bad faith alone, however, are insufficient to invoke the exception to work product protection. Moreover, EPS has not shown that it cannot obtain the desired information through any other means, including by deposition.[2]   *See United States Liab. Ins. Co.*, 2016 WL 2594067, at \*3.   EPS has not met its burden of showing its entitlement to the protected information.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Electric Power Systems International, Inc.'s Motion to Compel [38] is granted in part and denied in part.

**IT IS FURTHER ORDERED** that no later than **August 3, 2016**, Zurich American Insurance Company shall produce to Electric Power Systems International, Inc., the following portions of the previously withheld documents:

a.      Bates 145:   the information contained in the Subject line of the email

---

[2] EPS averred in its motion to compel that claims adjuster Brian Lindemann was to be deposed on May 19, 2016.   Although the briefing on this motion was closed at the time of the scheduled deposition, I have received no indication that the deposition was inadequate.

b.      Bates 158:   the information contained in the Subject line of the email

c.      Bates 168:   first redacted box – claim number, but *without* the accompanying worded description

d.      Bates 169-175:     copy of August 11 denial letter to EPS, but *without* handwritten note at top of Bates 169

e.      Bates 182:   first redacted box – claim number and worded description

f.      Bates 233:   claim number contained in Subject line of the email, but *without* the accompanying worded description

g.      Bates 234:   first redacted box – claim number and worded description

h.      Bates 347:   claim number contained in the first redacted box with general worded reference, but *without* worded description after hyphens

i.      Bates 375:   third redacted box, bottom of page

j.      Bates 376:   entirety of redactions

k.      Bates 381:   entirety of redactions

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 26th day of July, 2016.