UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ELECTRIC POWER SYSTEMS INTERNATIONAL, INC., | ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) | |
| v. | ) ) | No. 4:15 CV 1171 CDP |
| ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

In July 2014, plaintiff Electric Power Systems International, Inc. (EPS), made a claim under its commercial general liability insurance policy to defendant Zurich American Insurance Company for damage that occurred to a transformer while EPS was working on it. Zurich denied the claim based on two of the Policy's exclusions. The undisputed evidence shows that the Policy's "your work" exclusion applies to EPS's claim, and so the Policy provides no coverages. I will therefore grant Zurich's motion for summary judgment on all of EPS's claims and will deny EPS's motion. Judgment will be entered in favor of Zurich.

### Background

Louisville Gas and Electric Company (LGE) contracted for EPS to remove and crate parts of a transformer so that the transformer could be transported from

Wisconsin to Kentucky.  During the course of removing one of the transformer's bushings, EPS failed to extract one of the bolts that secured the bushing to an electrical lead from the internal coil of the transformer.  As a result, when EPS lifted the bushing from its position on the transformer, the lead that remained bolted to the bushing was likewise lifted and yanked from the internal coil.  Because of the damage to the coil, the transformer was rendered useless.  EPS made a claim under its commercial general liability policy to its insurance carrier, defendant Zurich.  Zurich denied coverage based on the Policy's exclusions.

EPS brought this three-count action against Zurich claiming that Zurich breached the insurance contract by failing to provide coverage for LGE's claim that EPS damaged the transformer; that Zurich acted in bad faith when it failed to effectuate a prompt settlement of LGE's claim; and that Zurich's failure to provide coverage constituted a vexatious refusal to pay.  Zurich now moves for summary judgment on all of EPS's claims, arguing that the Policy's exclusions apply to the property damage at issue here, therefore barring any recovery under the Policy which, in turn, precludes recovery on EPS's claims of bad faith failure to settle and vexatious refusal to pay.  EPS moves for summary judgment on its breach of contract claim, arguing that the Policy exclusions do not apply in the circumstances of this case.

## Summary Judgment Standard

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). I must view the facts in the light most favorable to the nonmoving party, "but only 'if there is a genuine dispute as to those facts.'" *RSA 1 Ltd. P'ship v. Paramount Software Assocs., Inc.*, 793 F.3d 903, 906 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042).

The parties agree that the relevant facts are not in dispute, but each argues that the law as applied to those facts requires that judgment be entered in their respective favor. For the following reasons, Zurich is entitled to judgment as a matter of law on the undisputed facts of this case.

## Evidence before the Court on the Motions

In July 2014, LGE purchased a used transformer from American Transmission Company (ATC) under a Transformer Sales Agreement that provided for LGE to test the transformer at the ATC site in Wisconsin and then transport the transformer from the ATC site to a power plant site in Kentucky. Under the Agreement, LGE would take title to the transformer upon successful and satisfactory completion of tests, oil removal, and internal inspection.

LGE contracted for EPS to test the transformer, drain the oil, assist in the inspection of the transformer, and remove and crate all parts necessary to relocate the transformer. The parts to be removed and crated included the transformer's bushings. LGE contracted for a separate company, ABB, to conduct the internal inspection.

On July 24 and 25, 2014, EPS conducted the tests, removed the oil, and prepared the transformer for internal inspection. ABB completed the internal inspection the morning of July 29, after which LGE took title to the transformer. EPS then began its disassembly of the external components, beginning with the bushings.

The Bushings

The transformer had a number of bushings to be removed and crated for shipment. Each bushing was attached to the transformer in such a way that the bottom portion was located inside the transformer and the top portion extended about nine feet from the top of the transformer. Each bushing had several connecting bolts, including bolts located on the interior of the transformer as well as others located externally. The bushings here were bottom-bolted bushings, meaning that the lead cable from the winding coil of the internal core of the transformer was bolted to the bottom of the bushing. Therefore, to remove a bushing from the transformer, the lead cable had to be disconnected from it, which

required someone to go into the internal components of the transformer and remove the bolts that attached the bushing to the lead. Removing the bushing from the transformer without first disconnecting the coil's lead cable would result in pulling on the interior core of the transformer and pulling out part of the winding coil.

The Incident

After LGE took title to the transformer on July 29, EPS began the process to remove the bushings. Only EPS employees worked on the transformer at this time.

During the attempted removal of the first bushing, two members of the EPS crew were inside the transformer to remove the bolts and disconnect the coil's lead cable. Two additional members of the crew were outside the transformer: one operated the crane to lift the disconnected bushing from the transformer, and the other was on top of the transformer to guide the bushing as it was being lifted. When the EPS crew thought that all bolts to the bushing had been removed, the crane proceeded to lift the bushing from the transformer. However, EPS had failed to remove an internal bolt that attached the coil's lead cable to the bushing. The lead thus remained attached to the bushing when the crane began to lift the bushing from the transformer.

The crane experienced some resistance in lifting the bushing but continued to pull upward. A final thrust from the crane forcibly yanked the bushing from the transformer, causing the bushing in turn to yank the attached lead cable from the

winding coil, damaging the coil and rendering the transformer useless and beyond repair. The bushing itself was not damaged.

The Policy and the Claim

At the time of the incident, a commercial general liability policy of insurance was in effect whereby Zurich agreed to pay sums that EPS was legally obligated to pay as damages "because of 'bodily injury' or 'property damage' to which this insurance applies." (ECF 54-1, EPS Exh. 1 at p. 1.) The Policy further stated:

> We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

(*Id.*) The Policy defined "property damage" as

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(*Id.* at p. 15.)

Under the Policy's exclusions, insurance did not apply to, *inter alia*,

> j. Damage to Property
>
>   "Property damage" to:
>
>   . . .

> (4) Personal property in the care, custody or control of the insured;
>
> . . . ; or
>
> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

(*Id.* at pp. 4-5.)

On July 30, 2014, EPS informed Zurich that damage occurred to the LGE transformer while a team of EPS employees was disassembling it at the ATC site, and it asked that a claim be started. On August 11, Zurich informed EPS that it disclaimed coverage for the incident under Exclusion j(4) of the Policy, that is, the "care, custody or control" exclusion; and Exclusion j(6) of the Policy, the "your work" exclusion. After additional investigation into the incident, Zurich continued to deny EPS's claim based on these exclusions.[1]

This action followed.

## Discussion

EPS claims that the property damage exclusions invoked by Zurich do not apply to this incident. With respect to Exclusion j(4), EPS argues that the transformer was not in its exclusive care, custody, or control when it was damaged

---

[1] EPS avers that it ultimately settled LGE's claim for $376,706.21, citing "Exhibit 12, Release." *See* Pltf.'s Stmnt. of Uncontroverted Facts, ECF 54 at p. 8. Although Zurich admits to this averment, *see* ECF 56-1 at p. 23, neither "Exhibit 12" nor any "Release" has been submitted to the Court in relation to the parties' cross motions for summary judgment.

but was instead under the care, custody, and control of LGE and ATC. With respect to Exclusion j(6), EPS argues that the particular part on which it was working at the time of the damage was the bushing and not the coil or core of the transformer, and thus that the "your work" exclusion would apply only to the bushing and not to the remainder of the transformer.

For the following reasons, Zurich properly disclaimed coverage of the claim under Exclusion j(6) of the Policy, the "your work" exclusion.

The parties agree that I must apply Missouri law in this diversity action. Under Missouri law, "the interpretation of an insurance contract is generally a question of law[.]" *D.R. Sherry Constr., Ltd. v. American Family Mut. Ins. Co.*, 316 S.W.3d 899, 902 (Mo. banc 2010). "Under Missouri rules of construction, the language in an insurance contract is given its plain meaning if the language is plain and unambiguous." *Becker Metals Corp. v. Transportation Ins. Co.*, 802 F. Supp. 235, 239 (E.D. Mo. 1992). If an insurance policy is open to different constructions, Missouri courts will adopt the construction most favorable to the insured. *St. Paul Fire & Marine Ins. Co. v. Missouri United Sch. Ins. Council*, 98 F.3d 343, 345 (8th Cir. 1996). The policy must be read as a whole to determine the intent of the parties. *Columbia Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 77 (Mo. banc 1998); *The Renco Group, Inc. v. Certain Underwriters at Lloyd's, London*, 362 S.W.3d 472, 478 (Mo. Ct. App. 2012).

"Under Missouri law the plaintiff [insured] has the burden of showing that the loss and damages are covered by the policy; the defendant insurer has the burden of demonstrating the applicability of any exclusions on which it relies." *American States Ins. Co. v. Mathis*, 974 S.W.2d 647, 649 (Mo. Ct. App. 1998). Insurance policy exclusions are to be strictly construed against the insurer. *Capitol Indem. Corp. v. 1405 Assocs., Inc.*, 340 F.3d 547, 550 (8th Cir. 2003) (applying Missouri law).

Business risk exclusions, such as the "your work" exclusion in j(6) of the Policy here, "are based on the apparently simple premise that general liability coverage is not intended as a guarantee of the quality of an insured's product or work." *Schauf*, 967 S.W.2d at 77-78. They are "designed to exclude from coverage the business risk of faulty workmanship." *Id.* at 79. EPS argues that the "your work" exclusion does not apply to its claim for damage to the transformer because it was working on only the bushing when the damage occurred. EPS contends that because the bushing was the "particular part" on which it was working, Exclusion j(6) applies only to the bushing and not to the remainder of the transformer. The undisputed evidence shows EPS's work not to have been so limited, however.

Policy Exclusion j(6) excludes coverage for property damage to a particular part of any property on which EPS performed work, if EPS's work was incorrectly

performed on it. When EPS worked to remove the bushing from the transformer, it performed work on the coil's lead cable by removing the bolts that attached the lead to the bushing. It was EPS's action in failing to detach the lead from the bushing that caused the lead to be pulled from the coil, which is the damage for which EPS claims coverage. While "detach lead cable from bushing" was not specifically included in its contract with LGE, EPS's work to detach the lead was an integral part in removing the bushing from the transformer. Indeed, disconnecting the lead was part and parcel of this work — the bushing simply could not have been removed if EPS's work on the lead was not properly performed. Therefore, the coil's lead cable was a "particular part" of the property on which EPS worked. *See Spirtas Co. v. Nautilus Ins. Co.*, 715 F.3d 667, 672 (8th Cir. 2013) (applying Missouri law); *Brake Landscaping & Lawncare, Inc. v. Hawkeye-Sec. Ins. Co.*, 625 F.3d 1019, 1023 (8th Cir. 2010) (applying Missouri law). Since the damage to the coil was caused by EPS's incorrect performance of its work in detaching the coil's lead cable from the bushing, Exclusion j(6) applies and there is no coverage for the claimed damage.

Because the Policy's "your work" exclusion applies to EPS's claim for coverage here, I need not consider whether the "care, custody or control" exclusion also applies. In addition, because there was no coverage under the Policy, Zurich cannot be found to have acted in bad faith in failing to settle the claim. *See Purscell*

*v. TICO Ins. Co.*, 959 F. Supp. 2d 1195, 1200-01 (W.D. Mo. 2013) (insurer could not have acted in bad faith in failing to settle claim where question existed as to whether there was even coverage). Nor can Zurich be found to have vexatiously refused to pay the claim. *See Arch Ins. Co. v. Sunset Fin. Servs., Inc.*, 475 S.W.3d 730, 735 (Mo. Ct. App. 2015).

Accordingly,

**IT IS HEREBY ORDERED** that defendant Zurich American Insurance Company's Motion for Summary Judgment [49] is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff Electric Power Systems International, Inc.'s Motion for Partial Summary Judgment on Count I [53] is **DENIED**.

A separate Judgment is entered this date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 19th day of September, 2016.